NO









NO. 12-07-00249-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

ROBYNN
MOODY,  §                      APPEAL
FROM THE 411TH

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §                      TRINITY COUNTY, TEXAS

                                                                                                                                                          


MEMORANDUM
OPINION

            Robynn
Moody appeals her conviction for the offense of engaging in organized criminal
activity, a state jail felony.  In two
issues, she argues that accomplice testimony was insufficiently corroborated to
support her conviction, and that the trial court gave an erroneous answer to a
question from the jury.  We affirm.

 

Background

            Appellant, along with her father,
Bob Moody, and Anita Chick, was charged with engaging in organized criminal
activity.  Essentially the three were
charged with running a gambling operation and possessing gambling devices[1]








 at a location called The Spot in Trinity
County.  At trial, Texas Rangers
testified about their undercover investigation leading up to raids on the
various gambling establishments in Trinity County.  The two establishments that drew the most
attention during the trial were The Spot, also called The Dot, and The Spur or
The Silver Spur.  Each establishment used
gambling machines and was open to the public. 
The focus of the Rangers’ investigation was The Spot, and they conducted
a raid on that establishment.

            The trial revolved around Appellant’s
connection to The Spot and the gambling machines being offered to the public at
that location.  Anita Chick and other
accomplices testified that Appellant and her father managed The Spot and that
Appellant’s name and telephone number were at the top of a list of people for
employees to call if there were problems at the establishment.  Testimony from accomplices also established
that Appellant would access the gambling machines with a laptop computer to
evaluate the business activity, work shifts for workers, and take the “bank,”
the working cash, with her if she closed the establishment.  Marsha Johnson, an employee at The Spot,
testified that Appellant had called to tell her that she had been indicted and
arranged to have her bond posted.  The State also called Tim Suniga, a general contractor
in Trinity County, as a witness.  Suniga
testified that he did maintenance on various buildings and businesses owned or
managed by Bob Moody and Appellant. 
Suniga testified that he installed air conditioning ducts at The Spot,
and also performed maintenance on the “money exchanger” on various machines at
the business.  Suniga testified that he
was working on the air conditioning at The Spot when Appellant came to check on
his work.  He said she appeared to be
checking on the operation and ensuring that everyone was doing their jobs
appropriately.  Suniga also testified
that Appellant called him several times to do work at The Spot.

            Appellant testified that she did not
run The Spot.  She testified that she ran
The Spur.  She conceded that the same kinds
of gambling devices were offered at The Spur, but insisted that she was not
involved in any businesses with her father or with The Spot.  Appellant admitted that her name, with the
unusual spelling of two “n”s, and her mobile telephone number, were first on
the list of people to call if there was a problem at The Spot. 

            The case was given to the jury after
the State and Appellant finished presenting evidence.  During deliberations, the trial court
received two notes from the jury.  After
receiving each of the notes, the trial 
court consulted with the lawyers and gave a written reply to the jury
that was approved by both the State and Appellant’s attorney.  The jury found Appellant guilty of engaging
in organized criminal activity by keeping a gambling place as charged in the
indictment.  The court assessed
punishment at confinement for two years and released Appellant to community
supervision for two years.

            Appellant filed a motion for new
trial, complaining that the trial court erred in its answer to the second of
the two jury notes.  The trial court
overruled the motion for new trial.  This
appeal followed. 

 

Sufficiency of Nonaccomplice Evidence

            In her first issue, Appellant
contends the conviction cannot be sustained because insufficient nonaccomplice
evidence connects her to the offense.

            A conviction may not be sustained on
the testimony of an accomplice unless there is other evidence “tending to
connect a defendant to the offense committed.” 
Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon Supp. 2007); Simpson v. State, 181 S.W.3d 743,
753 (Tex. App.–Tyler 2005, pet. ref’d). 
This other evidence need not directly connect the defendant to the crime
or be sufficient by itself to establish guilt, but it must do more than merely
show the commission of the offense.  Tex. Code Crim. Proc. Ann. art. 38.14; Castillo
v. State, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).  The corroboration requirement is fulfilled if
the combined weight of the nonaccomplice evidence tends to connect the
defendant to the offense.  Cathey
v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).  The corroborating evidence may consist of
circumstantial evidence.  Gosch v.
State, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991).

            To evaluate whether there is
sufficient corroborating evidence, we eliminate the accomplice testimony from
our consideration and examine the record to ascertain whether the remaining
evidence tends to connect the defendant with the offense.  Castillo, 221 S.W.3d at
691.  The accomplice witness rule is a
statutorily imposed sufficiency review and is not derived from federal or state
constitutional principles that are the basis for the legal and factual
sufficiency standards.  Vasquez v.
State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

            Ample nonaccomplice evidence “tends
to connect” Appellant to the offense. 
Appellant admitted she went to The Spot, and that she owned gambling
machines.  Tim Suniga, a nonaccomplice,
testified that Appellant called him a number of times to make repairs at The
Spot, including repairing the gambling machines, and that she appeared to be
managing the employees at The Spot. 
Further, Appellant’s name was first on the list at The Spot of people to
call if there was trouble.  This
nonaccomplice evidence tends to connect Appellant to The Spot, to the gambling
there, and to the charged offense.  We
overrule Appellant’s first issue.

 

Response to Jury Question

            In her second issue, Appellant
argues that the trial court erred in its response to the second note sent out
by the jury during its deliberations. 
Appellant contends the court’s answer conflicted with the applicable law
contained in the court’s charge to the jury.

            The jury’s second note asked if it
could render a verdict based only on witness testimony.  The court discussed a response with Appellant’s
counsel and the district attorney. 
Appellant’s counsel made a suggestion as to how to answer the
question.  The court pointed out that the
jury asked for a yes or no answer and proposed another slightly different
answer.  In response, counsel said “I
guess so.”  The court offered further
refinement to the answer, to which counsel said, “That may work.”  Finally, the court offered one more revised
answer and asked Appellant’s counsel, “Are you okay with that?”  Appellant’s counsel responded “Yes.”  The court then wrote its answer and sent it
to the jury room. 

            Appellant now contends the court’s
response was one 

 

which resulted in the Appellant, Robynn Moody being
convicted based on the testimony of an accomplice witness.  There can be no other interpretation of the
actions of the jury and the answer presented by the Court. This instruction is
contrary to the law and Jury Instructions which correctly stated the law.  

 

 

Appellant makes
no further argument.  An unfounded
conclusion that “there can be no other interpretation” is not a legal argument,
and this court will not make Appellant’s arguments for her.  See Bell v. State, 90 S.W.3d
301, 305 (Tex. Crim. App. 2002) (citing Rhoades v. State, 934
S.W.2d 113, 119 (Tex. Crim. App. 1996)).

            Even so, there is no complaint
preserved for our review because Appellant failed to object to the trial court’s
response to the jury’s question, and Appellant does not argue that she suffered
egregious harm.  A trial court’s
communication with the jury during deliberations is governed by statute.  See Tex.
Code Crim. Proc. Ann. art. 36.27 (Vernon Supp. 2007).  A jury must communicate with the trial court
in writing, the court must answer in writing, and the court must submit the
question and the court’s proposed answer to the defendant and his counsel for
objections before giving a response to the jury.  Word v. State, 206 S.W.3d 646, 648–49
(Tex. Crim. App. 2006).  A defendant must
object to a proposed answer to a jury question to preserve the issue for
appellate review.  Deblanc v. State,
799 S.W.2d 701, 708–09 (Tex. Crim. App. 1990); see also Word, 206
S.W.3d at 651–52.

            We have reviewed the discussion
between the court and counsel before the court gave the jury a written answer
to its questions.  The court submitted
its proposed answer to the parties before giving it to the jury.  Neither party objected to the court’s
proposed answer.  And, although Appellant
had suggested alternative wording, Appellant voiced no objection and offered no
alternative response when the court offered its final proposed answer.  In fact, counsel said “yes” when asked if he
was “okay” with the court’s proposed response. 
As such, no issue relating to the trial court’s answer to the jury’s second
question is preserved for our review.  We
overrule Appellant’s second issue.

 

Disposition

            Having overruled Appellant’s two
issues, we affirm the judgment of the trial court.

 

                                                                                                    SAM GRIFFITH   

                                                                                                                Justice

 

 

Opinion delivered April 9, 2008.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1] The devices in question were slot machines, which are sometimes called
“eight–liner machines.”  Texas Penal Code
Section 47.01 provides that the term “gambling device” includes electronic or
mechanical games that record and award “credits or free games.”  See Tex.
Penal Code Ann. § 47.01 (4)(A) (Vernon 2003).  The statute specifically excludes from this
definition games that reward the player exclusively with noncash items, or
representations redeemable for these items, having wholesale value of not more
than ten times the amount charged to play the game or device once or $5,
whichever is less.  Tex. Penal Code § 47.01 (4)(B) (Vernon
Supp. 2003); see generally Fifty Six (56) Gambling Devices v. State,
No. 07-03-00132-CV, 2004 Tex. App. LEXIS 2880 (Tex. App.–Amarillo 2004, no
pet.) (mem. op., not designated for publication) (discussion regarding “the
fuzzy animal” exception to the gambling statute).  Appellant does not assert that offering these
machines to the public was lawful.